NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2460
_____

GAIL VENTO, LLC,
                    Appellant
              v.

UNITED STATES OF AMERICA


_____

No. 13-2461
_____

RENEE VENTO, LLC,
                    Appellant
              v.

UNITED STATES OF AMERICA


_____

No. 13-2462
_____

NICOLE VENTO, LLC
                    Appellant
              v.

UNITED STATES OF AMERICA
_____

On Appeal from the District Court of the
Virgin Islands of United States
(D.C. No. 09-cv-00003/04/05)
District Judge:  Hon. Juan R. Sanchez
_____

Before: CHAGARES, JORDAN and SHWARTZ, *Circuit Judges*.

(Filed: December 16, 2014)
_____

OPINION[*]
_____

JORDAN, *Circuit Judge*.

Appellants Gail Vento LLC, Renee Vento LLC, and Nicole Vento LLC

(collectively, the "Vento LLCs") appeal the judgment entered against them in this tax

case by the District Court of the Virgin Islands. The Vento LLCs argue that the District

Court erred in admitting an exhibit into evidence that they believe constituted

inadmissible hearsay and was protected by the attorney-client privilege. They also argue

that the District Court erred in ruling that the Final Partnership Administrative

Adjustments ("FPAAs") issued to them by the Internal Revenue Service ("IRS") were

timely. Their arguments are unpersuasive, and we will affirm.

I.      **Background**

In this consolidated matter, three limited liability companies, the Vento LLCs,

sought review of the FPAAs issued by the IRS regarding their federal income tax returns

for 2001, pursuant to section 6226 of the Internal Revenue Code ("IRC"). Since each of

the Vento LLCs was identically situated with regard to its respective administrative

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

adjustments and petition, the District Court held a consolidated bench trial in December 2011 and made the following findings of fact, which the Vento LLCs do not challenge on appeal.

### A.    The District Court's Findings of Fact

In 1986, Richard Vento ("Richard") co-founded Objective Systems Integrators, Inc. ("Objective Systems"), a computer software company.  In 1995, Objective Systems went public, but Richard and his co-founder remained the majority shareholders.  Also in 1995, Richard formed the Vento LLCs under Colorado law, each one named after one of his daughters: Gail, Renee, and Nicole.  Each of the Vento LLCs was owned 99% by its namesake daughter, 0.5% by Richard, and 0.5% by Richard's wife, Lana Vento ("Lana"). The Vento LLCs elected to be treated as partnerships for tax purposes and each LLC designated Richard as its tax matters partner.   Richard distributed Objective Systems shares to the Vento LLCs, and, as of November 23, 2000, each LLC directly owned 1,584,157 shares of Objective Systems stock and indirectly owned an additional 52,606 shares of Objective Systems stock.

In early 2000, Objective Systems engaged two investment banks to help solicit offers for the purchase of the company.  On November 16, 2000, Agilent Technologies, Inc. ("Agilent") made a nonbinding tender offer to acquire all shares of Objective Systems stock for $17.75 per share.[1]  On November 21, 2000, the Objective Systems

---

[1] The District Court's findings of fact reference $17.75 as the amount Agilent offered per share of Objective Systems stock and then reference $17.50 as the amount paid by Agilent per share of Objective Systems stock.  While these findings are not necessarily inconsistent, it appears as though the reference to $17.50 may have been

3

board of directors approved Agilent's tender offer, subject to certain conditions. On Friday, November 24, 2000, Objective Systems' board of directors held a meeting, which Richard attended via telephone, at which the board gave final approval to Agilent's tender offer. At the close of business on November 24, 2000, Objective Systems stock was publicly traded at $13.50 per share on NASDAQ.[2] The sale of the stock to Agilent closed on January 8, 2001. Each of the Vento LLCs received approximately $28,000,000 from the sale of Objective Systems stock.

On Friday, November 24, 2000, the same day that Objective Systems' board of directors gave final approval of Agilent's tender offer, Richard retained attorney Robert Colvin to execute "Purchase Agreements" transferring a percentage of the interests in the Vento LLCs to newly formed, tax-exempt Cayman Islands entities in exchange for deferred private annuities. Richard did not relate the details or otherwise provide notice of the Agilent tender offer to Colvin. But Richard did tell Colvin that he was in the process of negotiating the sale of Objective Systems and that he needed the transactions to be completed before the end of the day on November 24, 2000.

With the help of another attorney, Colvin achieved the formation of three Cayman Islands companies (collectively, the "Cayman Entities"). Colvin also drafted three "Purchase Agreements" in which each of Richard's daughters transferred an 18.94-

---

made in error.

[2] There is no indication in the record that the terms of Agilent's tender offer were publicly announced before the close of business on November 24, 2000, and confidentiality of the price may to explain why the stock was publicly traded for less than $17.75 per share.

percent interest in her namesake LLC to one of the new Cayman Entities. Each

"Purchase Agreement" stated that the parties agreed the fair market value of each 18.94-percent interest to be $4,050,000, which was calculated based on $13.50 per share. The

"Purchase Agreements" further provided that, in exchange for acquiring the stated

ownership interests in each Vento LLC, each corresponding Cayman Entity would pay

the appropriate Vento daughter $772,871.26 per year for each year of Lana's life,

beginning on November 24, 2007.

On May 2, 2001, each Vento LLC transferred $4,050,000 to its corresponding

Cayman Entity. On June 4, 2001, each Vento LLC transferred an additional $1,275,000

to its corresponding Cayman Entity.[3] On June 8, 2001, each Vento LLC redeemed the

18.94-percent ownership interest previously transferred to its corresponding Cayman

Entity in exchange for the May 2, 2001 and June 4, 2001 transfers, totaling $5,325,000.

On October 10, 2002, the Vento LLCs filed partnership tax returns with the IRS

for the year 2001. Each tax return reported income from the Objective Systems sale as

flow-through income originating from another Vento family entity, this one called V.I.

Derivatives, LLC.[4] The returns also included a Schedule K-1 allocating income to each

---

[3] The $1,275,000 sum appears to have been transferred to make up the shortfall that resulted from the original valuation, which was based on the $13.50 publicly traded share price on NASDAQ versus Agilent's $17.75 payment per share.

[4] V.I. Derivatives, LLC is a Virgin Islands LLC formed in August 2001, and it appears to have been created expressly for the purpose of transferring and reporting realized gains from the sale of Objective Systems stock on behalf of other entities controlled by members of the Vento family, including the Vento LLCs. *VI Derivatives, LLC ex rel. VIFX LLC v. United States*, No. 06-12, 2011 WL 703835, at *6 (D.V.I. Feb. 18, 2011).

Cayman Entity corresponding to the respective Vento LLC. And in each tax return, the Vento LLCs claimed that the basis in the Objective Systems stock should be adjusted upward as a result of the transfers to the Cayman Entities. Because the Cayman Entities were non-tax entities, no income tax was paid on their purported gain from the sale of Objective Systems. On October 9, 2008, after examining the 2001 partnership returns filed by each of the Vento LLCs, the IRS issued a Notice of FPAA to each Vento LLC for 2001. The FPAAs did the following: (1) clarified that the gain from the sale of the Objective Systems stock was income of the Vento LLCs; (2) disallowed the allocation of income made to the Cayman Entities and re-allocated that income back to the Vento LLCs; and (3) disallowed the adjustments to Vento LLCs' basis in the Objective Systems stock. The FPAAs also stated that each Vento LLC was liable for two non-cumulative, accuracy-related monetary penalties at the partnership level.[5]

### B.    The Bench Trial

The Vento LLCs filed a petition for readjustment of partnership items pursuant to IRC § 6226, and, in December 2011, the District Court held a consolidated bench trial. At trial, the government relied on the "assignment of income" doctrine,[6] arguing that,

---

[5] The government conceded that one of the penalties does not apply and did not ask the District Court to sustain it.

[6] Under that doctrine, an assignment of income is not effective to shift the incidence of tax to the assignee because the power to dispose of income is equivalent to its ownership. *Helvering v. Horst*, 311 U.S. 112, 119 (1940). Under the assignment of income doctrine, "once a right to receive income has 'ripened' for tax purposes, the taxpayer who earned or otherwise created that right, will be taxed on any gain realized from it, notwithstanding the fact that the taxpayer has transferred the right before actually receiving the income." *Ferguson v. Comm'r*, 174 F.3d 997, 1003 (9th Cir. 1999).

because the transfers to the Cayman Entities were made in anticipation of income, the entire tax burden from the sale of Objective Systems stock should be placed on the Vento LLCs.

In a memorandum opinion, the District Court found that "the very earliest that the sale of interest in the [Vento LLCs] to the Cayman [E]ntities could have occurred is after the close of the markets on November 24, 2000." The Court found that the sale relied on the November 24, 2000 publicly traded price for Objective Systems stock on NASDAQ even though the sale was completed "well after [Objective Systems] gave the final approval to Agilent's cash tender offer" and "there was no real risk that the merger would not occur." As a result, the District Court concluded that the Vento LLCs' right to the gain from the sale of their Objective Systems stock had ripened prior to the transfers of interest to the Cayman Entities, and the Vento LLCs were therefore liable for the tax on all of the gain from the sale of Objective Systems stock.

## II.    Discussion[7]

The Vento LLCs advance two arguments to support their assertion that the District Court should not have entered judgment in favor of the United States. First, they argue that the District Court erred in admitting a legal memorandum ("Exhibit 53") into evidence and that it is highly probable the admission of Exhibit 53 affected the outcome

---

[7] The District Court had jurisdiction under 28 U.S.C. § 1346(e) and 26 U.S.C. § 6226, as made applicable by 48 U.S.C. § 1612(a). We have jurisdiction pursuant to 28 U.S.C. § 1291.

of the case.  Second, they argue that the FPAAs were issued after the limitations period had expired.  Neither argument succeeds.

> A.      *Admission of Exhibit 53*

The Vento LLCs argue that the District Court committed reversible error by admitting Exhibit 53, which they assert contained inadmissible hearsay and was also protected by the attorney-client privilege.  We need not address the merits of that argument, however, because, even if we assume that the District Court committed legal error when it admitted Exhibit 53 into evidence, we have no difficulty concluding that any such error was harmless.

Exhibit 53 is a 16-page legal memorandum entitled "Analysis of Private Annuity/VUL Policy Transactions" dated October 27, 2004.  (JA2 at 335-50.)  The memorandum addresses several issues, including whether the transfers of interests in the Vento LLCs to the Cayman Entities occurred too late during the Agilent tender offer negotiations to avoid being characterized as "assignments of income." (*Id*. at 338-40.) Applying the assignment of income doctrine, the memorandum opined that "if the essential terms of the tender offer were agreed upon when the LLC interests were transferred to the [Cayman Entities]," then the Vento LLCs would be liable to the IRS for unpaid taxes stemming from the capital gains accrued from the sale of the Objective Systems shares.  (*Id*. at 339.)  And, after analyzing the relevant facts, the memorandum concluded that the "transactions are clear examples of impermissible assignments of income and should not have been implemented."  (*Id*. at 346.)

8

Under Federal Rule of Evidence 103(a), "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party." We have held, therefore, that a district court's discretionary evidentiary rulings will give rise to reversible error only where "a substantial right of the party is affected." *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 205 (3d Cir. 2000) (internal quotation marks omitted). "[I]f it is highly probable that the error[] did not affect the outcome of the case," we will leave even an erroneous evidentiary ruling undisturbed. *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 228 (3d Cir. 2008) (internal quotation marks omitted) (second alteration in original). The party claiming error has the burden of establishing that the error affected a substantial right. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009); *Morgan v. Covington Twp.*, 648 F.3d 172, 180 (3d Cir. 2011).

We are convinced that the admission of Exhibit 53, even if it is considered to be error, was harmless. Exhibit 53 was cumulative of other evidence in the stipulated record, which fully supported the District Court's conclusion that the Vento LLCs made anticipatory assignments of "ripened" income. The joint stipulation of facts established that on November 21, 2000, Objective Systems' board of directors approved Agilent's tender offer, subject to certain conditions. And on November 24, 2000, the Objective Systems board of directors gave final approval to the tender offer. Relying on those facts, the District Court found that "there was no real risk that the merger would not occur," a finding the Vento LLCs do not contest. (JA1 at 20.) It was clear, therefore, on the basis of the stipulated record alone, that the Vento LLCs' right to income was effectively locked in before they transferred any interest to the Cayman Entities; hence

9

the application of the assignment of income doctrine was warranted. *Ferguson v. Comm'r*, 174 F.3d 997, 1003 (9th Cir. 1999). In short, the admission of Exhibit 53 does not constitute reversible error.[8] *See United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002) (finding it "highly probable" that superfluous evidence that had been erroneously admitted made no difference in the ultimate jury verdict).

### B.      Statute of Limitations

The Vento LLCs next argue that the FPAAs were issued after the limitations period had expired. That argument fails because the Vento LLCs conceded below that, under the authority of *Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner*, 114 T.C. 533 (2000), *interlocutory appeal dismissed*, 249 F.3d 175 (3d Cir. 2001), their statute of limitations defense would be viable only "if the [Vento daughters] are found to be residents of the Virgin Islands and without any filing obligation in the United States." (JA2 at 49-50.) That concession, coupled with our earlier holding in *Vento v. Director of Virgin Islands Bureau of Internal Revenue*, 715 F.3d 455, 477-79 (3d Cir. 2013), that the

---

[8] The Vento LLCs' briefs fail to acknowledge that the District Court's memorandum opinion did not rely on Exhibit 53 at all. They attempt to sidestep this indication that Exhibit 53 was not needed to reach the District Court's conclusion by arguing that Exhibit 53 "provided a roadmap to the IRS and to the Court on the issue of assignment of income." (Appellant's Reply Br. at 16.) The argument is off point. The relevant questions are whether the District Court wrongly admitted Exhibit 53 and whether the Vento LLCs thereby suffered harm, not whether the government was permitted to consult the document when preparing for trial. Even if the Vento LLCs are correct that Exhibit 53 provided a roadmap for the government, they cite no authority holding that a party may not rely upon inadmissible evidence when formulating theories to present at trial. Their argument simply begs the question of whether admission of Exhibit 53 was harmless.

10

three Vento daughters were not bona fide residents of the Virgin Islands in 2001, is fatal

to the statute of limitations argument.[9]

## III. Conclusion

For the reasons noted, we will affirm the judgment of the District Court.

---

[9] We decline the Vento LLCs' request that we repudiate *Rhone-Poulenc*. Indeed, our sister circuits that have directly addressed the limitations period issue have unanimously followed *Rhone-Poulenc*. *See Curr-Spec Partners L.P. v. Comm'r*, 579 F.3d 391, 397-98 (5th Cir. 2009), *cert. denied*, 560 U.S. 924 (2010); *AD Global Fund, LLC v. United States*, 481 F.3d 1351, 1354 (Fed. Cir. 2007); *Andantech L.L.C. v. Comm'r*, 331 F.3d 972, 977 (D.C. Cir. 2003).