147 T.C. No. 7

UNITED STATES TAX COURT

RENEE VENTO, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos.   992-06, 993-06,              Filed September 7, 2016.
              1168-06.


        Ps did not file U.S. Federal income tax returns for 2001 but
instead filed individual territorial income tax returns with the Virgin
Islands Bureau of Internal Revenue for that year.  Ps now concede
that they were not bona fide residents of the Virgin Islands for 2001.
They seek to credit against their U.S. tax liabilities for that year,
under I.R.C. sec. 901, payments made with their Virgin Islands
returns and estimated payments they made to the U.S. Treasury for
2001 that were later "covered into" the Virgin Islands Treasury under
I.R.C. sec. 7654.

        Held:  Ps are not allowed to credit against their U.S. income tax
liabilities under I.R.C. sec. 901 the amounts paid as tax to the Virgin
Islands for their 2001 taxable years.  First, Ps failed to establish that

_____

        [1]Cases of the following petitioners are consolidated herewith:  Gail C.
Vento, docket No. 993-06; and Nicole Mollison, docket No. 1168-06.

their determination that they were subject to Virgin Islands tax rather than U.S. tax for 2001 was based on a reasonable interpretation of applicable law and that they had exhausted all effective and practical means of securing a refund of the amounts paid to the Virgin Islands. Consequently, Ps did not meet their burden of proving that the amounts in issue were "taxes paid" within the meaning of sec. 1.901-2(e), Income Tax Regs.  Second, the limitation on foreign tax credits imposed by I.R.C. sec. 904 applies to taxes paid to the Virgin Islands, and Ps failed to establish that the amounts in issue did not exceed the applicable limitations.  Finally, allowance of the claimed credits would be inconsistent with Congress' intent that payments of Virgin Islands tax by U.S. citizens or residents not be creditable under I.R.C. sec. 901.

Joseph M. Erwin, Marjorie Rawls Roberts, and Erika A. Kellerhals, for petitioners.

John Aletta and James C. Fee, Jr., for respondent.

OPINION

HALPERN, Judge:  Respondent determined deficiencies in petitioners' Federal income tax for 2001, along with additions to tax under section 6651 and penalties under section 6662.[2]  Some of the adjustments in the notices of

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for 2001, and all Rule references are to the Tax Court Rules of Practice and Procedure.

deficiency involved "partnership items", within the meaning of section 6231(a)(3). Upon respondent's motion, we struck the adjustments and pleadings involving partnership items and dismissed those portions of the cases. The parties have agreed to resolve other issues raised by the notices, leaving as the sole issue remaining for decision whether petitioners are entitled to credits under section 901 against their U.S. tax liabilities for 2001 for (1) estimated payments they made to the U.S. Treasury for that year that were subsequently "covered into" the Treasury of the U.S. Virgin Islands (Virgin Islands) under section 7654 after petitioners filed 2001 returns with the Virgin Islands Bureau of Internal Revenue (BIR) and (2) payments made by petitioners with their 2001 Virgin Islands returns.

## Background

The case was submitted fully stipulated under Rule 122. When petitioners Renee Vento, Gail Vento, and Nicole Mollison filed their petitions in these cases, they resided in California, the Virgin Islands, and Nevada, respectively. Petitioners are sisters--the daughters of Richard G. and Lana J. Vento--and are (and always have been) citizens of the United States.

Throughout 2001, petitioners lived in the United States, where they either worked, attended school, or cared for school-age children.[3]  Petitioner Renee Vento received a bachelor's degree from San Diego State University in June 2001. After her graduation, until the spring of 2002, Renee lived in Nevada, where she worked in her family's home office.  From 1998 until December 2002, petitioner Gail Vento lived in Boulder, Colorado, where she was a full-time student at the University of Colorado.  From 1995 until 2006, petitioner Nicole Mollison lived with her husband and their children in Nevada.  During 2001, Nicole served as a volunteer and substitute teacher at a school attended by two of her children.

Although petitioners had previously made estimated tax payments to the U.S. Treasury for 2001, they did not file U.S. Federal income tax returns for that year but instead filed individual territorial income tax returns with the BIR in October 2002.  Each of those returns included a payment of tax.

---

[3]Although petitioners, in response to respondent's request, made admissions regarding their specific circumstances during 2001, they also objected that most of the admitted facts were irrelevant and immaterial in the light of their more general admissions that they were not bona fide residents of the Virgin Islands for 2001. We will take into account the specific facts that petitioners admitted regarding their circumstances during 2001, over their objections, because we find those facts relevant to the question of the reasonableness of the interpretation of applicable law on the basis of which petitioners filed returns with and paid tax to the Virgin Islands for that year.

Because petitioners filed their 2001 returns with the BIR rather than the Internal Revenue Service (IRS), in 2003 the U.S. Treasury transferred to the BIR under section 7654 the estimated payments petitioners made for 2001, along with credits to their accounts from prior years.

The notices of deficiency respondent issued on October 14, 2005, reflect his determination that none of petitioners was a bona fide resident of the Virgin Islands for 2001. Each petitioner now concedes that point and also concedes that none of her income for 2001 was sourced in the Virgin Islands and that she did not work in the Virgin Islands or conduct any trade or business there.

On October 17, 2005, petitioner Renee Vento filed an amended return with the BIR for 2001 requesting a refund of the tax reported on her 2001 Virgin Islands return. Records of the BIR designate Renee's 2001 Form 1040X as having a status of "closed" as of April 21, 2009, without the issuance of a refund check.

The parties' stipulations that petitioners were not bona fide residents of the Virgin Islands for 2001 are consistent with the conclusions reached by the U.S. District Court for the District of the Virgin Islands and the U.S. Court of Appeals for the Third Circuit in VI Derivatives, LLC v. United States, No. 06-12, 2011 WL 703835 (D.V.I. Feb. 18, 2011), aff'd in part, rev'd in part sub nom. Vento v. Dir. of V.I. Bureau of Internal Revenue, 715 F.3d 455 (3d Cir. 2013) in litigation

concerning notices of deficiency and FPAAs issued by the BIR and the IRS to petitioners and their parents for 2001. In VI Derivatives, 2011 WL 703835, at *17, the District Court concluded that neither petitioners nor their parents were bona fide residents of the Virgin Islands for 2001. On appeal, the Court of Appeals determined in Vento, 715 F.3d at 477, that "the District Court erred in holding that Richard and Lana Vento were not bona fide residents of the Virgin Islands as of December 31, 2001," but the Court of Appeals "readily agree[d] with the District Court that none of the Vento daughters was a bona fide resident at that time."

## Discussion

## I. Background

### A. The Taxation of Virgin Islands Income of U.S. Citizens or Residents

Although the Virgin Islands is an unincorporated territory of the United States, 48 U.S.C. sec. 1541(a) (2012), it is generally not part of the United States for tax purposes, see sec. 7701(a)(9). Under the "mirror" tax system established by Congress in 1921, the Virgin Islands uses the Code as its tax law, with references to "United States" treated as references to the Virgin Islands (and vice versa). Act of July 12, 1921, ch. 44, sec. 1, 42 Stat. at 123 (codified as amended at 48 U.S.C. sec. 1397 (2006)).

In 1954, Congress modified the mirror tax system and established the "inhabitant rule", under which corporations and individuals whose permanent residence was in the Virgin Islands satisfied their U.S. income tax obligations by paying tax on their worldwide income to the Virgin Islands. Revised Organic Act of the Virgin Islands (ROA), ch. 558, sec. 28(a), 68 Stat. at 508 (1954). The ROA also provided that any tax levied by Congress on the inhabitants of the Virgin Islands would be "covered into" (i.e., paid to) the Virgin Islands. Id.; see also sec. 7654 (providing that income tax collections with respect to bona fide possessions residents shall be covered into the Treasury of the possession).

As part of the Tax Reform Act of 1986 (TRA), Pub. L. No. 99-514, sec. 1274(a), 100 Stat. at 2596, Congress repealed the inhabitant rule and enacted section 932, which coordinates the U.S. and Virgin Islands income tax systems. Section 932 provides separate rules for U.S. citizens or residents who are bona fide residents of the Virgin Islands at the close of a taxable year (section 932(c) taxpayers) and those who, while not bona fide Virgin Islands residents, have income from sources within the Virgin Islands or effectively connected with the conduct of a Virgin Islands business (section 932(a) taxpayers). Section 932(c) taxpayers are generally exempt from U.S. tax. See sec. 932(c)(4). To qualify for the exemption, however, a section 932(c) taxpayer must file a return with the

Virgin Islands reporting all of his income and fully pay the tax due to the Virgin Islands.[4]  Id.  A section 932(a) taxpayer, by contrast, must compute a single U.S. tax and allocate part of that tax to the Virgin Islands.  See sec. 932(a) and (b).  The required allocation applies the ratio of the taxpayer's Virgin Islands adjusted gross income to total adjusted gross income.  Sec. 932(b)(1) and (2).  Taxes paid to the Virgin Islands under section 932(b)(1) by a section 932(a) taxpayer are creditable against the taxpayer's U.S. tax liability.  Sec. 932(b)(3).  In computing the income tax liability of a section 932(a) taxpayer, the provisions of the Code other than sections 932 and 7654 apply, treating the Virgin Islands as part of the United States.  See sec. 932(a)(3).

Before the enactment of the American Jobs Creation Act of 2004 (Jobs Act), Pub. L. No. 108-357, 118 Stat. 1418, a subjective, facts-and-circumstances test governed whether an individual qualified as a bona fide resident of the Virgin Islands.  Under those rules, an individual was generally considered a bona fide resident if actually present in the Virgin Islands and not a mere transient or sojourner.  See secs. 1.871-2(b), 1.934-1(c)(2), Income Tax Regs.

---

[4]The tax paid to the Virgin Islands on non-Virgin Islands income must be computed under the mirror code with no reduction or remittance under any other provision of Virgin Islands law.  See secs. 932(c)(4)(C), 934(a) and (b)(1).

The indefiniteness of the governing standard encouraged some U.S. citizens to claim bona fide residence in the Virgin Islands, and thereby avoid U.S. taxation, without making "major lifestyle changes" and spending only "a few weeks or less out of the year" in the Virgin Islands. See Notice 2004-45, 2004-2 C.B. 33, 34. In Notice 2004-45, 2004-2 C.B. at 33, the IRS announced its intent to "challenge these positions in appropriate cases."

Similar concerns prompted Congress to enact section 937(a), which tightened the standards for bona fide residence in a possession. Jobs Act, sec. 908(a), 118 Stat. at 1655. Congress understood that "certain U.S. citizens and residents * * * [were] claiming that they * * * [were] exempt from U.S. income tax on their worldwide income based on a position that they * * * [were] bona fide residents of the Virgin Islands or another possession" even though they "often * * * [did] not spend a significant amount of time in the particular possession during a taxable year and, in some cases, continue[d] to live and work in the United States." H.R. Conf. Rept. No. 108-755, at 793-794 (2004), 2004 U.S.C.C.A.N. 1341, 1830-1831. In adopting a more specific, stricter rule for determining bona fide residence, Congress intended no inference regarding the interpretation of the prior standards. Id. at 795, 2004 U.S.C.C.A.N. at 1832.

Applying the Virgin Islands mirror code in varying contexts raised questions about the need for adjustments to the Code's terms beyond simply substituting "Virgin Islands" for "United States".  In addressing those questions, the Court of Appeals for the Third Circuit (the Federal appellate court with jurisdiction over the Virgin Islands, 28 U.S.C. sec. 1294(3)) developed what has come to be known as the "equality principle".  The court first articulated this principle in Chi. Bridge & Iron Co. v. Wheatley, 430 F.2d 973 (3d Cir. 1970).  In Chi. Bridge, the court held that, in computing its Virgin Islands tax liability, a U.S. corporation was entitled to claim the deduction then allowed by section 922 to Western Hemisphere trade corporations.  In support of its conclusion, the court reasoned:  "The scheme of the statute is to impose a tax obligation to the Virgin Islands equivalent to what the United States would collect on the same income, but for the mirror system."  Id. at 977; see also Johnson v. Quinn, 821 F.2d 212, 216 (3d Cir. 1987) (holding that, under the equality principle adopted in Chi. Bridge, tax paid to California by Virgin Islands residents is deductible under section 164 but not creditable under section 901).

B.    The Foreign Tax Credit

By imposing tax on the worldwide income of U.S. citizens, residents and domestic corporations, the U.S. tax regime creates a potential for foreign source

income of U.S. taxpayers to be taxed by both the United States and the jurisdiction in which it is earned. To ameliorate that double tax burden, section 901 allows U.S. citizens, resident aliens, and domestic corporations to credit foreign income tax paid against their U.S. income tax liabilities. See Burnet v. Chi. Portrait Co., 285 U.S. 1, 7 (1932) ("[T]he primary design of the [foreign tax credit] provision was to mitigate the evil of double taxation."); see also Notice 98-5, 1998-1 C.B. 334, 334 ("The foreign tax credit provisions of the Code * * * effectuate Congress's intent to provide relief from double taxation[.]"). In particular, section 901(b)(1) allows a U.S. citizen or corporation to credit "the amount of any income * * * taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States".

Income taxes paid to foreign jurisdictions or U.S. possessions are creditable only to the extent that they are compulsory amounts paid in satisfaction of a legal obligation. Sec. 1.901-2(a)(2)(i), Income Tax Regs. ("A foreign levy is a tax if it requires a compulsory payment pursuant to the authority of a foreign country to levy taxes."). In addition, section 901 allows a credit only for taxes "paid". Sec. 1.901-2(e)(1), Income Tax Regs. An amount that is "reasonably certain" to be refunded is not treated as a "tax paid". Id. subpara. (2)(i). However, an amount that does not exceed "a reasonable approximation" of a taxpayer's "final tax

liability" is not reasonably certain to be refunded.  Id.  Similarly, section 1.901-

2(e)(5)(i), Income Tax Regs., provides:

> An amount paid is not a compulsory payment, and thus is not an
> amount of tax paid, to the extent that the amount paid exceeds the
> amount of liability under foreign law for tax.  An amount paid does
> not exceed the amount of such liability if the amount paid is
> determined by the taxpayer in a manner that is consistent with a
> reasonable interpretation and application of the substantive and
> procedural provisions of foreign law * * * in such a way as to reduce,
> over time, the taxpayer's reasonably expected liability under foreign
> law for tax, and if the taxpayer exhausts all effective and practical
> remedies * * * to reduce, over time, the taxpayer's liability for foreign
> tax * * *.  An interpretation or application of foreign law is not
> reasonable if there is actual notice or constructive notice (e.g., a
> published court decision) to the taxpayer that the interpretation or
> application is likely to be erroneous.  In interpreting foreign tax law, a
> taxpayer may generally rely on advice obtained in good faith from
> competent foreign tax advisors to whom the taxpayer has disclosed
> the relevant facts.  * * *

Section 904 limits the amount of creditable foreign tax to prevent the

allowance of credits beyond the extent necessary to achieve their underlying

purpose.  A taxpayer's overall section 904 limitation for a given year equals the

portion of the taxpayer's precredit U.S. tax liability attributable to foreign source

income.  The limitation prevents taxpayers from using foreign tax credits to reduce

their U.S. tax on U.S. source income.  See, e.g., H.R. Conf. Rept. No. 108-755,

supra at 366, 2004 U.S.C.C.A.N. at 1449 ("The foreign tax credit generally is

limited to the U.S. tax liability on a taxpayer's foreign-source income, in order to

ensure that the credit serves the purpose of mitigating double taxation of foreign-source income without offsetting the U.S. tax on U.S.-source income.").

II.     The Parties' Arguments

A.     Whether the Amounts in Issue Qualify as "Taxes Paid"

Respondent alleges that, because petitioners were not legally liable for the Virgin Islands tax in issue, those amounts were not compulsory and thus were not "taxes paid".  See sec. 1.901-2(e)(5)(i), Income Tax Regs.  Because petitioners were not bona fide residents of the Virgin Islands as of December 31, 2001, they were subject to Virgin Islands tax for 2001 only to the extent that they had income for that year from sources within the Virgin Islands or effectively connected with a Virgin Islands business.  See secs. 871(a)(1), (b)(1), 932(b)(1) and (2).  Because petitioners have stipulated that none of their 2001 income was sourced in the Virgin Islands and that, during that year, they did not work in the Virgin Islands or conduct any trade or business there, respondent argues that petitioners were not obligated to pay tax to the Virgin Islands for 2001 and that the amounts for which they claim credits were not "taxes paid".

Respondent further argues that, because the payments in issue exceeded petitioners' liabilities for Virgin Islands tax, they "should ultimately be refunded".  See sec. 1.901-2(e)(2)(i), Income Tax Regs.  Because taxpayers are required to

"exhaust[] all effective and practical remedies" to reduce their foreign tax liabilities, respondent claims, "petitioners' remedy for any double taxation that may result from paying tax due to the United States is to seek a refund from the * * * Virgin Islands". Cf. id. subpara. (5)(i).

Petitioners argue that, under section 1.901-2(e)(5)(i), Income Tax Regs., the amounts for which they claim credits under section 901 did not exceed their tax liabilities under the mirror code because their position that they were bona fide residents of the Virgin Islands as of December 31, 2001, and thus liable for Virgin Islands income tax for the year then ended, was based on a reasonable interpretation of the rules then in effect that determined residence in the Virgin Islands.

B.    Whether the Amounts in Issue Were Paid in 2001

Respondent argues that "[p]etitioners have failed to show that any purported tax payments were made to the * * * Virgin Islands during 2001, other than certain estimated tax payments paid to the United States that were subsequently transferred by respondent to the BIR through the cover over procedure in 2003." Respondent acknowledges that section 905(a) allows taxpayers who use the cash method of accounting to claim foreign tax credits for the year in which the tax accrues, but he asserts that there is no evidence that petitioners made a valid

election under that section. Petitioners, in turn, argue that "[r]espondent's position ignores the authority of Treas. Reg. § 301.6402-4 which considers taxes paid with a return to be timely paid."

C. The Applicability of the Section 904 Limitation

Respondent further argues that, even if the amounts in issue satisfied income tax obligations imposed on petitioners by the Virgin Islands, the amounts could not be credited under section 901 because none of petitioners established that she had any foreign source taxable income for 2001. Thus, respondent suggests, we should treat each petitioner as having a section 904 limitation for that year of zero.

While petitioners apparently do not dispute that the credits they claim exceed any section 904 limitation they might have for 2001, they argue that section 904 does not limit their credits because that section does not apply to taxes paid to the Virgin Islands. Petitioners claim support for their argument from the conference report on the TRA, which states the conferees' intent that, in specified circumstances, taxes paid to the Virgin Islands would be creditable against U.S. tax "notwithstanding the general limitations on the foreign tax credit." H.R. Conf. Rept. No. 99-841 (Vol. II), at II-682 (1986), 1986-3 C.B. (Vol. 4) 1, 682.

D.    The Equality Principle

More generally, petitioners argue that the Court of Appeals for the Third Circuit's equality principle requires that U.S. and Virgin Islands tax law "be construed harmoniously to produce one tax on citizens" and "avoid double taxation."

Respondent observes that that Court of Appeals developed the equality principle as an aid to interpreting the mirror code applicable in the Virgin Islands. Because the present case involves the interpretation of U.S. tax law, respondent claims, the equality principle has no application.

III.    Analysis

A.    Introduction

On the basis of the arguments presented by the parties, we would be inclined to hold for respondent, but our conviction in that regard is strengthened by a more fundamental point that the parties' technical arguments miss. In regard to those arguments: First, petitioners have not met their burden of proving that the amounts in issue were "taxes paid". Second, we agree with respondent that "taxes paid" to the Virgin Islands are not exempt from the foreign tax credit limitation of

section 904.[5]  Third, while petitioners are undoubtedly correct that Congress did not intend that the same income be subject to both U.S. and Virgin Islands tax, they are mistaken about the means Congress chose to prevent the double taxation of Virgin Islands income earned by U.S. individuals.  As respondent observes, the Court of Appeals for the Third Circuit's equality principle is a tool for interpreting the mirror code applicable in the Virgin Islands and thus has no bearing on the present case.  Turning to the more fundamental point, however, petitioners are also mistaken in looking to the foreign tax credit as the means to ameliorate double taxation in their situation.  Because section 932 provides its own rules to prevent Virgin Islands income earned by U.S. citizens or residents from being subject to

---

[5]Although respondent claims that petitioners did not validly elect to credit foreign taxes as they accrue, he points to no authority that specifies the requirements of a valid election.  At most, the authorities respondent cites establish that a taxpayer who files a return for a taxable year using the cash method of accounting to determine creditable foreign tax cannot elect to use the accrual method for that year by filing an amended return.  See Strong v. Willcuts, 36-1 U.S. Tax Cas. (CCH) para. 9032 (D. Minn. 1935); Rev. Rul. 59-101, 1959-1 C.B. 189.  None of the petitioners filed a U.S. income tax return for 2001.  The record does not indicate whether any of petitioners made an election under sec. 905(a) in a prior year.  Nonetheless, because petitioners have failed to establish that the amounts in issue (1) were "taxes paid" within the meaning of sec. 1.901-2(e), Income Tax Regs., or (2) do not exceed the limitations imposed by sec. 904, we need not decide whether petitioners' claims of the credits in issue in response to the notices of deficiency constitute valid elections to determine their foreign tax credits on the accrual method.

both Virgin Islands and U.S. tax, amounts paid as tax by U.S. citizens or residents to the Virgin Islands are outside the foreign tax credit regime of sections 901-909.

B.      Petitioners Have Not Met Their Burden of Establishing That the Amounts in Issue Qualify as "Taxes Paid".

Petitioners claim that, because "there was no clear authority on determining residency in the Virgin Islands for 2001", the position that they were bona fide residents of the Virgin Islands and thus required to pay Virgin Islands income tax for that year was a "reasonable interpretation" of applicable law. The absence of clear authority in regard to an issue, however, does not establish the reasonableness of all possible means of resolving it. The record includes no evidence that petitioners relied on the advice of competent advisers in taking the position that they were bona fide residents of the Virgin Islands as of December 31, 2001. Neither the U.S. District Court for the District of the Virgin Islands nor the Court of Appeals for the Third Circuit had any apparent difficulty concluding that petitioners were not bona fide residents of the Virgin Islands for 2001. Of course, the courts' decisions against petitioners do not, by themselves, establish that petitioners' claims to bona fide Virgin Islands residence for 2001 were not based on reasonable interpretations of the applicable law. But, as we read their opinions, the courts did not seem to find the decision a close one. See Vento, 715

F.3d at 477 ("[W]e readily agree with the District Court that none of the Vento

daughters was a bona fide resident[.]"); VI Derivatives, 2011 WL 703835, at *16

(characterizing the Vento daughters' claims as "more easily resolved" than those of

their parents).[6]

Moreover, the concerns expressed by the IRS and Congress in 2004 about

perceived abuses of the standards for determining bona fide residence then in

effect gave petitioners reason to know, before the expiration of the period of

limitations for claiming a refund of the Virgin Islands tax they paid for 2001, that

their claims of bona fide Virgin Islands residence might be erroneous.  The

concerns that prompted the IRS to issue Notice 2004-45, supra, and Congress to

enact section 937 were particularly acute in regard to U.S. citizens, such as

petitioners, who claimed bona fide residence in the Virgin Islands while spending

only minimal time there and continuing to live and work in the United States.

---

[6]Petitioners argue that the Court of Appeals' determination that their parents were bona fide Virgin Islands residents for 2001 "reinforces" the reasonableness of their own interpretation of the relevant rules.  They claim that they and their parents paid Virgin Islands tax for 2001 relying on "the same interpretation" of the residency rules.  As noted in the text, however, while the District Court and the Court of Appeals reached different conclusions regarding the bona fide residency of petitioners' parents, both courts agreed that the parents had a stronger claim to residency than their daughters.  Thus, the Court of Appeals' acceptance of the parents' position provides little, if any, support for the reasonableness of petitioners' claims to bona fide Virgin Islands residence for 2001.

Even though by the fall of 2004 petitioners had reason to know of the possible error in their claims of bona fide Virgin Islands residence for 2001, only petitioner Renee Vento requested a refund of the tax she had paid to the Virgin Islands for that year.[7]  The record gives no indication of the extent to which she pursued her refund claim or the ultimate disposition of her request by the BIR.[8]

In sum, petitioners have not demonstrated, on the basis of advice obtained in good faith from competent advisers or otherwise, that they paid Virgin Islands tax for 2001 in reliance on a reasonable interpretation of the relevant law. Further, the record does not detail the efforts petitioner Renee Vento made in pursuing her refund claim, and it provides no evidence at all of any attempt by petitioner Nicole Mollison or petitioner Gail Vento to pursue claims for a refund of the tax they paid to the Virgin Islands, despite being on notice of the possible error in the legal interpretation on the basis of which they paid the tax.  Therefore, petitioners have also failed to demonstrate that they exhausted "all effective and practical

---

[7]Although the BIR's records give a filing date for Renee Vento's amended return as October 17, 2005, we assume the amended return was timely filed because October 15, 2005, fell on a Saturday.  See secs. 6511(a), 7503.

[8]That Renee Vento's 2001 Form 1040X had the status "closed" as of April 21, 2009, in the records of the BIR might indicate a denial of her request for a refund.  If so, the record does not explain why the BIR denied her claim while litigation over her 2001 tax liability to the Virgin Islands remained ongoing.

remedies" to reduce their liabilities for Virgin Islands tax. Cf. sec. 1.901-2(e)(5)(i), Income Tax Regs. Consequently, we conclude that, even if Virgin Islands tax paid by U.S. individuals is otherwise creditable under section 901, none of petitioners has met her burden of proving that the amounts in issue were "taxes paid" within the meaning of section 1.901-2(e), Income Tax Regs.

C.      Section 904 Limits the Creditability of "Taxes Paid" to the Virgin Islands.

Even if the amounts in issue were otherwise creditable under section 901, we reject petitioners' argument that the section 904 limitation does not apply to taxes paid to the Virgin Islands and agree with respondent that each petitioner has failed to demonstrate that she had a section 904 limitation for 2001 sufficient to allow her to credit the amount in issue. Petitioners' argument that Congress intended to allow foreign tax credits for taxes paid to the Virgin Islands on U.S. source income without regard to the section 904 limitation rests on a single sentence pulled out of context from the legislative history of the TRA. The statement on which petitioners rely describes a transition rule regarding the repeal

of the inhabitant rule that applied to tax collected by the Virgin Islands before

1987. That rule obviously has no application to the present case.[9]

> D. The More Fundamental Point: Congress Did Not Intend That Virgin Islands "Taxes Paid" by U.S. Individuals Be Creditable Under Section 901.

Although our evaluation of the parties' arguments leads us to conclude that

petitioners are not entitled to credit the amounts in issue under section 901, our

---

[9]The inhabitant rule in effect before 1986 raised the possibility that corporations with relatively minimal contact with the Virgin Islands could avoid tax altogether on U.S. source income. See, e.g., Danbury, Inc. v. Olive, 627 F. Supp. 513, 514 (D.V.I. 1986) (referring to that possibility as "the ultimate tax shelter"), rev'd, 820 F.2d 618 (3d Cir. 1987). Although the repeal of that rule generally applied prospectively, to taxable years beginning after 1986, it applied retroactively to income other than Virgin Islands income. Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 1277(c)(2), 100 Stat. at 2601. Congress ceded jurisdiction to tax that income to the Virgin Islands, however, if the Virgin Islands collected the tax by a specified date. As the conference report explains:

> To the extent that the Virgin Islands either collects tax by the date of enactment or, pursuant to an assessment issued by August 16, 1986, collects tax by January 1, 1987, on non-V.I. source, non-V.I. effectively connected income of a V.I. inhabitant that is subject to U.S. tax for pre-1987 taxable years, that V.I. tax is to be creditable against the U.S. tax liability on that income. To the extent that that V.I. tax is imposed on U.S. income, it is to be creditable against U.S. tax on that particular income notwithstanding the general limitations on the foreign tax credit.

H.R. Conf. Rept. No. 99-841 (Vol. II), at II-682 (1986), 1986-3 C.B. (Vol. 4) 1,

682.

conclusion in that regard is reinforced by a more fundamental point that those arguments miss:  Congress did not intend that taxes paid by U.S. citizens or residents to the Virgin Islands be eligible for the foreign tax credit.

The imposition of Virgin Islands tax on the income of U.S. individuals need not result in the type of double taxation that the foreign tax credit is designed to prevent.  The coordination rules of section 932 allow taxpayers to avoid that possibility and thus supplant the foreign tax credit regime.

A section 932(c) taxpayer (bona fide Virgin Islands resident) has no need to credit Virgin Islands "taxes paid" under section 901 to reduce U.S. tax liability.  If the taxpayer complies with the conditions of section 932(c)(4), the taxpayer will have no gross income for U.S. tax purposes and thus no U.S. tax liability.  But see sec. 1.901-1(g)(4), Income Tax Regs. (as amended by T.D. 9391, 2008-1 C.B. 945) (denying foreign tax credit for Virgin Islands tax paid on income excluded under section 932(c)(4)).[10]  A section 932(c) taxpayer who does not meet the conditions of section 932(c)(4) will owe tax to both the Virgin Islands and the

---

[10]As applied to a Virgin Islands resident, sec. 1.901-1(g)(4), Income Tax Regs., has no apparent effect:  A section 932(c) taxpayer who complies with the sec. 932(c)(4) conditions will have no U.S. tax liability against which to credit Virgin Islands "taxes paid".  Sec. 1.901-1(g)(4), Income Tax Regs., also applies, however, to residents of other U.S. possessions who, under the rules applicable to those possessions, can exclude only their possessions income from their U.S. gross income.

United States but will be able to credit the tax he pays to the Virgin Islands against his U.S. tax liability under a provision in regulations adopted in 2008.[11]  See sec. 1.932-1(c)(3), Income Tax Regs. (as revised by T.D. 9391, supra).  The regulations provide that taxes paid by the section 932(c) taxpayer to the Virgin Islands "shall be considered creditable in the same manner as taxes paid to the United States (for example, under section 31) and not as taxes paid to a foreign government (for example, under sections 27 and 901)."  Id.

A section 932(a) taxpayer (non-Virgin Islands resident) similarly has no need to credit Virgin Islands taxes paid under section 901 to reduce her U.S. tax liability.  Section 932(a) taxpayers, again, compute a single U.S. tax and allocate part of that tax to the Virgin Islands.  Sec. 932(a) and (b).  As a result of the required allocation, a section 932(a) taxpayer effectively pays tax to the Virgin Islands on her Virgin Islands income and pays tax to the United States on her remaining income.  In short, the coordination scheme implemented by section 932

---

[11]To the extent that the Virgin Islands imposes tax on the section 932(c) taxpayer's Virgin Islands income at a rate below the applicable U.S. rate, the noncompliant section 932(c) taxpayer will owe a residual tax liability to the United States.  The taxpayer's failure to comply with sec. 932(c)(4) will thus deny him the benefit of any reduction or remission of tax on Virgin Islands income allowed by Virgin Islands law pursuant to sec. 934(b).

provides sufficient means to prevent the same income from being subject to both U.S. and Virgin Islands tax.

The claim of a credit under section 901 by a section 932(a) taxpayer is not only unnecessary--it is not allowed. See sec. 932(a)(3). Section 932(a)(3), again, provides that, in computing the U.S. tax liability of a section 932(a) taxpayer, the income tax provisions of the Code other than sections 932 and 7654 apply, treating the Virgin Islands as though it were part of the United States. The 2008 regulations spell out some of the consequences of that treatment. Sec. 1.932-1(g)(1)(ii), Income Tax Regs. (as revised by T.D. 9391, supra). For example, for foreign tax credit purposes, the Virgin Islands income of a section 932(a) taxpayer is treated as income from sources within the United States. Sec. 1.932-1(g)(1)(ii)(B), Income Tax Regs. (as revised by T.D. 9391, supra).[12] Thus, any income earned by a section 932(a) taxpayer from sources in the Virgin Islands

---

[12]Sec. 1.932-1(g)(1)(ii)(B), Income Tax Regs., applies for taxable years ending after April 9, 2008. Sec. 1.932-1(j), Income Tax Regs. (as amended by T.D. 9391, 2008-1 C.B. 945). A provision to the same effect in temporary regulations issued in 2005 applied for taxable years ending after October 22, 2004. Sec. 1.932-1T(g)(1)(ii)(B), (j), Temporary Income Tax Regs., 70 Fed. Reg. 18932, 18934 (Apr. 11, 2005). Because those provisions simply draw out a straightforward consequence of sec. 932(a)(3), their inapplicability for the year in issue is of little consequence. Virgin Islands income earned by a section 932(a) taxpayer in a taxable year ended before October 23, 2004, can readily be treated as U.S. source income on the basis of the terms of sec. 932(a)(3).

does not increase that taxpayer's section 904 limitation and thereby allow the taxpayer to claim additional credits under section 901 for taxes paid to jurisdictions other than the United States or the Virgin Islands.[13]

Moreover, just as section 932(a), in treating the Virgin Islands as part of the United States, requires Virgin Islands source income to be treated as U.S. source income, it also requires that taxes paid to the Virgin Islands be treated as paid to the United States. The drafters of the 2008 regulations presumably saw no need to draw out that particular implication of section 932(a)(3) because they could not imagine a circumstance in which a section 932(a) taxpayer would have reason to claim a credit under section 901 for Virgin Islands tax. Again, Virgin Islands

---

[13]The treatment of Virgin Islands income earned by a section 932(a) taxpayer as U.S. source income also means that, if the taxpayer's only income were from sources within either the United States or the Virgin Islands, her sec. 904 limitation would be zero. Consequently, even if Virgin Islands taxes paid by such a taxpayer were otherwise creditable, sec. 904 would prevent the taxpayer from crediting those taxes. Virgin Islands tax could be creditable by a section 932(a) taxpayer only if that taxpayer had income from sources outside the United States or the Virgin Islands. Even then, the taxpayer would have sufficient sec. 904 limitation to credit some or all of her Virgin Islands tax only if the jurisdiction outside the United States and the Virgin Islands imposed tax at a rate below the applicable U.S. rate (so as to not fully absorb the limitation). We cannot believe that Congress intended the creditability under sec. 901 of Virgin Islands taxes paid by a section 932(a) taxpayer to turn on such a fortuity.

taxes paid by a section 932(a) taxpayer are separately creditable against the taxpayer's U.S. tax liability under section 932(b)(3).[14]

A noncodified provision of the TRA, namely, sec. 1274(b), 100 Stat. at 2597, confirms our conclusion that, even though taxes paid to U.S. possessions are generally creditable under section 901, a section 932(a) taxpayer cannot claim a foreign tax credit for taxes paid to the Virgin Islands in excess of the amount creditable under section 932(b)(3).  Under TRA sec. 1274(b), any taxes imposed by the Virgin Islands beyond its allocable share of a section 932(a) taxpayer's U.S. tax are deductible under section 164 but "shall not be treated as taxes to which section 901 * * * applies."  Id.; see also Staff of J. Comm. on Taxation, General

---

[14]Petitioners mistakenly interpret a reference to the credit allowed by sec. 932(b)(3) in the preamble to temporary regulations under sec. 932 issued in 2005 as a reference to the foreign tax credit.  After describing the required allocation of a section 932(a) taxpayer's U.S. tax liability, the preamble states:  "On the individual's U.S. Federal income tax return, he or she may claim a credit for the tax required to be paid to the USVI, so that only the remainder is due to the United States."  70 Fed. Reg. 18921 (Apr. 11, 2005).  Interpreting the preamble as referring to the foreign tax credit, petitioners ask "why Respondent takes a different position for taxpayers under the new regulations than for former years."  Petitioners again seize on a single sentence and, reading it in isolation, attempt to give it a meaning different from what was intended.  Read in context, the quoted statement refers to the credit allowed by sec. 932(b)(3).  Petitioners are not entitled to that credit because none of their income for 2001 was from sources within the Virgin Islands or effectively connected with the conduct of a Virgin Islands business.  Consequently, no portions of their U.S. tax liabilities for that year are properly allocable to the Virgin Islands.

Explanation of the Tax Reform Act of 1986, at 1123 (J. Comm. Print 1987) ("Taxes paid to the Virgin Islands by * * * [a section 932(a) taxpayer], other than the Virgin Islands portion of his U.S. tax liability, will be treated for U.S. tax purposes in the same manner as State and local taxes.").

Petitioners' rather unusual situation might have given them an opportunity to slip through a crack in the statutory framework. The literal terms of section 932(a)(3) do not deny petitioners the credits in issue because no petitioner earned as much as a dollar of Virgin Islands income. We cannot imagine, however, that, while Congress did not intend to allow a foreign tax credit for Virgin Islands taxes paid by bona fide residents of the Virgin Islands or by non-Virgin Islands residents with Virgin Islands income, it nonetheless intended to allow a credit under section 901 for amounts paid as tax to the Virgin Islands by a taxpayer who is not a bona fide resident of the Virgin Islands, has no Virgin Islands income for the year in question, and thus did not actually owe tax to the Virgin Islands for that year.

In any event, we need not decide the case before us solely on the basis of Congress' intent to allow credits under section 901 for taxes paid by U.S. individuals to the Virgin Islands. As explained above, petitioners have failed to establish that (1) the amounts in issue were "taxes paid", within the meaning of section 1.901-2(e), Income Tax Regs., or (2) the claimed credits do not exceed

their applicable section 904 limitations.  Those failures give us adequate grounds to deny petitioners credits under section 901 for the amounts in issue.  We leave for another day the question of whether a U.S. citizen with no Virgin Islands income who nonetheless pays tax to the Virgin Islands on the basis of a "reasonable interpretation" of applicable law, cf. sec. 1.901-2(e)(5)(i), Income Tax Regs., that she was a bona fide resident of the Virgin Islands and who (fortuitously) has available section 904 limitation can credit that Virgin Islands tax under section 901 because the taxpayer falls outside the literal terms of section 932(a)(3).  Our conviction that, leaving aside any possible loophole in the statute, Congress did not intend that Virgin Islands taxes paid by U.S. citizens or residents be creditable under section 901 simply reinforces our conclusion that petitioners in the present cases are not entitled to the claimed tax credits.

We recognize of course that petitioners, having already paid tax to the Virgin Islands on their 2001 income, will as a result of our decision end up paying a second tax on the same income to the United States.  We take respondent's efforts to collect tax from petitioners on their 2001 income to mean that he has been unsuccessful in any attempts to secure from the Virgin Islands the tax petitioners have already paid for 2001.  Because Vento established that petitioners did not owe tax to the Virgin Islands for 2001, no apparent legal grounds would

justify the BIR's failure to either refund to petitioners or remit to the U.S. Treasury the amounts it collected from petitioners for 2001.[15]  Whatever sympathy we might have for petitioners, however, does not compel us to allow them a credit against their U.S. tax liabilities to which they are not legally entitled.[16]  To the extent that

---

[15]Media reports to which petitioners refer us suggest that the BIR's retention of the tax it collected from them for 2001 may be attributable to fiscal constraints faced by the Virgin Islands Government.

[16]Our sympathy for petitioners would be tempered to the extent that tax avoidance motives prompted their claims to Virgin Islands residence.  While the limited record before us is silent regarding petitioners' motivations, our agreement to base our decision on the parties' stipulations and admissions under Rule 122 does not require us to ignore the District Court's observation in VI Derivatives, LLC v. United States, No. 06-12, 2011 WL 703835, at *15 (D.V.I. Feb. 18, 2011), aff'd in part, rev'd in part sub nom. Vento v. Dir. of V.I. Bureau of Internal Revenue, 715 F.3d 455 (3d Cir. 2015), that "the timing of the [Vento] family's decision to 'move' to the Virgin Islands is suspicious."  According to that court, Vento family members realized a significant gain as a result of a transaction that occurred at the beginning of 2001.  Becoming Virgin Islands residents for that year held out the prospect of more than $9 million in tax savings to the family.  Id.

petitioners pay tax on the same income to both the United States and the Virgin Islands, they must seek a remedy elsewhere; they cannot find it in section 901.[17]

Decisions will be entered under

Rule 155.

---

[17]In support of their claim of unfair treatment at respondent's hands, petitioners observe that he "promised to allow the foreign tax credit" to similarly situated taxpayers in Huff v. Commissioner, 743 F.3d 790 (11th Cir. 2014), rev'g and remanding 138 T.C. 258 (2012).  In that case, the Commissioner sought to assure the U.S. Court of Appeals for the Eleventh Circuit that his attempt to collect tax from U.S. citizens who claimed bona fide Virgin Islands residence would not result in double taxation.  Toward that end, the Commissioner referred to the possibility that he might grant the taxpayers a credit against their U.S. tax liability for the taxes they had paid to the Virgin Islands.  Although the court was willing to take the Commissioner at his word, it noted that "[n]o existing Treasury regulations or published IRS guidance would require the IRS to grant a tax credit".  Id. at 798 n.9.  Thus, the court recognized that any credit that the Commissioner might gratuitously allow the taxpayers for taxes paid to the Virgin Islands on the basis of an erroneous claim to Virgin Islands residence would not be required by sec. 901 or any other applicable authority.